UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NORTH ATLANTIC OPERATING COMPANY INC.; and NATIONAL TOBACCO COMPANY, L.P., | § § § § | |
| Plaintiffs, | § § | C.A. NO.: |
| v. | § § | |
| MIKE'S WORLDWIDE LLC, d/b/a MIKE'S WORLDWIDE, INC. or MWI; MIKE'S NOVELTIES, INC.; MANISCH "MIKE" CHANDER SOHANI, a/k/a MANISCH CHANDRA, a/k/a MANISH CHANDLER; ALEX SOHANI; JOHN DOE CORPORATIONS #1-#100; and JOHN DOES #1-#100, | § § § § § § § § § | JURY TRIAL DEMANDED |
| Defendants. | § | |

## ORIGINAL COMPLAINT

Plaintiffs North Atlantic Operating Company, Inc., and National Tobacco Company, L.P. (together, "North Atlantic") bring this lawsuit against Defendants Mike's Worldwide LLC, d/b/a Mike's Worldwide Inc. or MWI ("Mike's Worldwide"); Mike's Novelties, Inc. ("Mike's Novelties"); Manish "Mike" Chander Sohani, a/k/a Manisch Chandra, a/k/a Manish Chandler ("Manisch Chander"); Alex Sohani;  John Doe Corporations #1-#100; and John Does #1-#100 (collectively, "Defendants"), and allege as follows:

1.      This is an anti-counterfeiting action against those who manufacture, import, export, sell, or otherwise distribute counterfeit ZIG-ZAG® brand cigarette paper products (defined as roll-your-own cigarette papers and accessories).

2.      Specifically, North Atlantic sues the Defendants for: (a) trademark infringement, in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114); (b) trademark and trade dress

infringement, and false designation of origin, in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); (c) copyright infringement, in violation of the U.S. Copyright Act of 1976 (17 U.S.C. §§ 101 *et seq.*); (d) injury to business reputation, in violation of Texas Business & Commerce Code § 16.29; (e) trademark infringement under Texas common law; (f) trade dress infringement under Texas common law; (g) unfair competition under Texas common law; and (h) civil conspiracy.

3.      North Atlantic has fresh evidence that the Defendants have been distributing counterfeit ZIG-ZAG® cigarette paper products in counterfeit packaging bearing fake versions of North Atlantic's ZIG-ZAG® and NAOC® Trademarks (defined below).

4.      North Atlantic cannot possibly verify the conditions under which the Defendants are manufacturing, importing, shipping, or storing such products. Thus, North Atlantic has irretrievably lost its right and the ability to control the quality of products sold under its brands.

5.      North Atlantic brings this lawsuit to stop the Defendants' counterfeiting and to try to recover from ongoing financial and reputational harm.  Unless and until the Defendants are stopped, North Atlantic will continue suffering—and so will its brands, its marks, and U.S. consumers.

## THE PARTIES

### Plaintiffs

6.      Plaintiff North Atlantic Operating Company, Inc. is a Delaware corporation with its principal place of business at 5201 Interchange Way, Louisville, Kentucky 40229.

7.      Plaintiff National Tobacco Company, L.P. is a Delaware limited liability company with its principal place of business at 5201 Interchange Way, Louisville, Kentucky 40229.

8.      Plaintiffs are the exclusive U.S. licensees of the valuable ZIG-ZAG® trademarks for cigarette paper products.  They have the full right and authority to enforce all intellectual property appearing on ZIG-ZAG® brand products and packaging.  They also have full right and authority to enforce the NAOC® Trademarks, NAOC© Copyright, and ZIG-ZAG® Orange Trade Dress (defined below).

## Defendants

9.      Defendant Mike's Worldwide is a Texas limited liability company with places of business at 7250 Harwin Drive, Suite C, Houston, Texas 77036 or 10515 Harwin Drive #136, Houston, Texas 77036. Defendant Mike's Worldwide may be served with process through its director and owner, Defendant Manisch Chander, at 7250 Harwin Drive, Suite C, Houston, Texas 77036.

10.      Defendant Mike's Novelties is a Texas for-profit corporation with its principal place of business at 10515 Harwin Drive, Suite 136, Houston, Texas 77036. Defendant Mike's Novelties may be served with process through its registered agent, Defendant Manisch Chander, at 10175 Harwin Drive, Suite 106, Houston, Texas 77036 or through Defendant Manisch Chander, its president, at his place of business at 10515 Harwin Drive, Suite 136, Houston, Texas 77036.

11.      Defendant Manisch Chander is a natural person and resident citizen of Texas. Defendant Manisch Chander may be served with process at his place of business at 10515 Harwin Drive, Suite 136, Houston, Texas 77036 or his residence located at 7107 Windwater Lagoon Drive, Houston, Texas 77036.

12.      Defendant Alex Sohani is a natural person and resident citizen of Texas. Defendant Alex Sohani may be served with process at his place of business at 10515 Harwin Drive, Suite 136, Houston, Texas 77036; or his residence located at 11427 Ashford Haven Drive,

Sugar Land, Texas 77478; or at 5303 Fenwick Way Ct, Sugar Land, Texas 77479; or at 427 Arctic Tern Ct, Sugar Land, Texas 77478.

### The John Doe Corporations and John Doe Defendants

13.     North Atlantic believes that other individuals and companies assist the above Defendants in their counterfeiting, and that other individuals are employed by Defendants and are also distributing counterfeit ZIG-ZAG® cigarette paper products to Texas consumers.  North Atlantic does not know these individuals' or companies' true names and capacities at this time. Therefore, North Atlantic sues them as John Doe Corporations #1-#100 and John Does #1-#100, inclusive, and will amend its Original Complaint to allege these Defendants' true names and capacities when it learns same.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over North Atlantic's Lanham Act claims pursuant to 28 U.S.C. §§ 1131, 1338, and 15 U.S.C. § 1121.

15.     This Court has subject matter jurisdiction over North Atlantic's Texas law claims pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

16.     Personal jurisdiction is proper in this District because each Defendant resides or is domiciled here; has its registered address or principal place of business here; or has continuous, systematic, and substantial contacts with the State of Texas, within this District, including doing business in Houston, Texas, and directing sales of counterfeit products to consumers throughout the State.

17.     Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because all Defendants reside here and a substantial portion of the events giving rise to North Atlantic's claims occurred here.

## STATEMENT OF FACTS

### North Atlantic's ZIG-ZAG® Brand Products

18.     Since 1938, North Atlantic and its predecessor-in-interest have continuously distributed ZIG-ZAG® brand cigarette paper products in the United States.

19.     In 1997, North Atlantic was established to be the exclusive U.S. distributor of ZIG-ZAG® brand cigarette paper products.

20.     Authentic ZIG-ZAG® brand cigarette paper products come in several varieties, which differ in thickness, quality of paper, size, and the like.

21.     Among the cigarette paper products North Atlantic distributes in the United States are the ZIG-ZAG® 1¼ Size French Orange products shown below ("ZIG-ZAG® Orange"):

### ZIG-ZAG® Orange



22.     Authentic ZIG-ZAG® Orange cigarette paper is described as easy rolling, slow-burning classic paper.

23.     All authentic ZIG-ZAG® Orange products are manufactured in France from the highest-quality ingredients.

24.     North Atlantic imports all authentic ZIG-ZAG® Orange cigarette paper into the United States through one port of entry.  Thereupon, North Atlantic subjects the products and packaging to strict and exacting quality control tests.

25.     North Atlantic strives to ensure that all authentic ZIG-ZAG® products, including ZIG-ZAG® Orange products:  (a) are of uniform high quality; (b) meet North Atlantic's precise standards; and (c) properly display the ZIG-ZAG® and NAOC® Trademarks and other source identifiers.

26.     If the products pass North Atlantic's rigorous inspection, then they are sold directly to North Atlantic's "direct accounts" (for the most part, variety wholesale distributors throughout the United States).

27.     North Atlantic's direct accounts distribute the authentic products to retailers and, in some cases, other wholesalers.

28.     The authentic products ultimately are purchased, and used, by U.S. consumers, many of whom have loyally purchased ZIG-ZAG® brand products for years.

**North Atlantic's ZIG-ZAG® and NAOC® Trademarks**

29.     As detailed below, all authentic ZIG-ZAG® Orange products that North Atlantic distributes display the following valid and subsisting trademarks, which are registered on the Principal Register of the U.S. Trademark Office and have become incontestable:

      a.      U.S. Registration No. 610,530 for ZIG-ZAG (Stylized);



      b.      U.S. Registration No. 1,127,946 for ZIG-ZAG (Word Mark);

**ZIG ZAG**

c.      U.S. Registration No. 2,169,540 for the Smoking Man Design (Circle Border):



d.      U.S. Registration No. 2,169,549 for the Smoking Man Design (No Border):



(together, the "ZIG-ZAG® Trademarks"). True and correct copies of the ZIG-ZAG® trademarks' registrations are attached as Exhibit A.

30.     North Atlantic has exclusive rights to distribute cigarette paper products bearing the ZIG-ZAG® Trademarks, pursuant to an exclusive trademark licensing and distribution agreement with the registrant, French company Bolloré, S.A.

31.     North Atlantic also owns federal registrations and common-law rights for the following North Atlantic Operating Company, Inc. trademarks, which also appear on the Principal Register of the United States Trademark Office:

a.      U.S. Registration Nos. 2,664,694 and 2,664,695 for NORTH ATLANTIC OPERATING COMPANY INC. and Gear Design:

       b.      U.S. Registration Nos. 2,610,473 and 2,635,446 for NORTH ATLANTIC

OPERATING COMPANY (Word Mark):

**NORTH ATLANTIC OPERATING COMPANY**

(together, the "NAOC® Trademarks). True and correct copies of the NAOC® Trademarks'

registrations are attached as Exhibit B.

      32.     Like the ZIG-ZAG® Trademarks, the NAOC® Trademarks appear on all

authentic ZIG-ZAG® Orange papers and packaging that North Atlantic distributes in the United

States.

      33.     Because of its tremendous sales history, and because of the exclusive, lengthy,

and extensive use of the ZIG-ZAG® and NAOC® Trademarks on goods of superior quality,

North Atlantic has developed substantial goodwill and a reputation as the exclusive source of

high-quality ZIG-ZAG® brand cigarette paper products in the United States.

      34.     North Atlantic has also become well known—nationwide—as the exclusive and

only source of authentic ZIG-ZAG® brand products, including ZIG-ZAG® Orange products.

Thus, U.S. consumers naturally associate ZIG-ZAG® brand products with North Atlantic.

**North Atlantic's NAOC© Copyright**

      35.     North Atlantic also owns a copyright registration for the visual material/computer

graphic titled, "North Atlantic Operating Company, Inc." (the "NAOC© Copyright").  A true

and correct copy of the registration certificate for the NAOC© Copyright is attached as Exhibit

C.

36.     Currently, and at all relevant times, North Atlantic has been the sole owner of all rights, title, and interest in and to the NAOC© Copyright.

37.     The NAOC© Copyright also appears on all authentic ZIG-ZAG® Orange product that North Atlantic distributes in the United States.

### North Atlantic's Highly Distinctive Product Packaging

38.     The product packaging for North Atlantic's ZIG-ZAG® Orange product is also highly distinctive.

39.     As illustrated below, North Atlantic's authentic ZIG-ZAG® Orange packaging features: (a) the ZIG-ZAG® and NAOC® Trademarks, (b) the NAOC© Copyright, (c) gold-fill lettering and design elements, (d) French phrases such as "Qualite Superieure" and "Braunstein Freres France," and (e) the express statement that such products are "Distributed by North Atlantic Operating Company, Inc."

**Booklet (inside)**



**Booklet (cover)**



(ZIG-ZAG® Trademarks, including ZIG-ZAG® (Stylized), ZIG-ZAG® (Word Mark) and Smoking Man Design (Circle Border and No Circle Border); the NAOC® Trademarks, including the NORTH ATLANTIC OPERATING COMPANY, INC. and Gear Design and the NORTH ATLANTIC OPERATING COMPANY (Word Mark); and the NAOC© Copyright)

**Carton (top view)**



**Carton (side view)**



(ZIG-ZAG® and NAOC® Trademarks and NAOC© Copyright) (viewed together, the "ZIG-ZAG® Orange Trade Dress"). The 8½" x 11" size versions of these photographs are attached as Exhibit D.

40. Currently, and at all relevant times, North Atlantic has used the ZIG-ZAG® Orange Trade Dress in commerce in the United States.

41. Each element of the ZIG-ZAG® Orange Trade Dress is arbitrary, non-functional, and highly distinctive.

42. Moreover, the overall look-and-feel of the ZIG-ZAG® Orange Trade Dress is arbitrary, non-functional, and highly distinctive.

43. For years, North Atlantic has extensively and continuously used the ZIG-ZAG® Orange Trade Dress. It has become distinctive over time through the acquisition of secondary meaning. To wit, U.S. consumers who see the ZIG-ZAG® Orange Trade Dress immediately associate it with North Atlantic as a source identifier, and they do not associate it with any other source.

**Defendants' Willful Infringing Activities**

44. Defendant Mike's Worldwide is involved in the purchase, sale, or other distribution of counterfeit ZIG-ZAG® cigarette paper products to Texas consumers.

45. Upon information and belief, Defendant Mike's Worldwide is owned by Defendant Manisch Chander, who also serves as its owner and director.

46. Defendant Mike's Novelties is also involved in the purchase, sale, or other distribution of counterfeit ZIG-ZAG® cigarette paper products to Texas consumers.

47. Upon information and belief, Defendant Mike's Novelties is owned by Defendant Manisch Chander, who also serves as its owner and director.

48.     Defendant Manisch Chander is also involved in the purchase, sale, or other distribution of counterfeit ZIG-ZAG® cigarette paper products to Texas consumers.  In fact, North Atlantic believes Manisch Chander uses Mike's Worldwide and other businesses as corporate vehicles for his own counterfeiting.

49.     Defendant Alex Sohani is also involved in the purchase, sale, or other distribution of counterfeit ZIG-ZAG® cigarette paper products to Texas consumers.

50.     Defendants  John Doe Corporations #1-#100 and John Does #1-#100, inclusive, are also involved in the purchase, sale, or other distribution of counterfeit ZIG-ZAG® cigarette paper products to Texas consumers.

51.     The Defendants are engaged in a widespread, unlawful scheme of acquiring, selling, or otherwise distributing counterfeit ZIG-ZAG® brand cigarette paper products— specifically, counterfeit ZIG-ZAG® Orange cigarette paper products.

52.     Upon information and belief, the Defendants' misconduct in engaging in this scheme is willful, in that they know the products they sell do not originate with North Atlantic, but they sell them anyway, to North Atlantic's detriment.

53.     The key to the Defendants' scheme is the sale of products housed in packaging that mimics the packaging of authentic ZIG-ZAG® Orange cigarette paper products, namely, packaging that bears reproductions of the ZIG-ZAG® and NAOC® Trademarks; unauthorized, unlicensed copies of the NAOC© Copyright; and unauthorized reproductions of the ZIG-ZAG® Orange Trade Dress.

54.     The Defendants' counterfeit ZIG-ZAG® Orange cartons and booklets are not the same size or dimensions as authentic ZIG-ZAG® Orange cartons and booklets.  The packaging

is of a noticeably cheaper quality. The papers, themselves, are shoddy and have a faster, hotter burn rate, potentially ruining consumers' smoking experiences.

55.     The counterfeit ZIG-ZAG® products are not subject to any known quality control standards. Thus, North Atlantic cannot vouch for the quality or relative safety of the counterfeit products because they have not, by definition, been subject to any of North Atlantic's quality control tests.

56.     North Atlantic also cannot tell what conditions the counterfeit products have been subjected to, and it cannot vouch for the quality of the ingredients used to manufacture them (even though they are distributed in packaging displaying North Atlantic's registered and licensed trademark and the false phrase "Distributed by North Atlantic Operating Company, Inc.").

57.     None of the Defendants are authorized or licensed to sell or distribute any infringing products bearing the ZIG-ZAG® or NAOC® Trademarks. None of the Defendants are authorized or licensed to sell or distribute any product packaging that simulates North Atlantic's ZIG-ZAG® Orange Trade Dress or that displays reproductions of the NAOC© Copyright.

58.     Nevertheless, North Atlantic has caught them doing so—on no fewer than four separate occasions—in direct violation of North Atlantic's rights.

**Defendants' Sale/Distribution of Counterfeit Products**

59.     The Defendants have been willfully selling and distributing counterfeit ZIG-ZAG® Orange cigarette paper products in Texas.

60.     In or around August 2016, North Atlantic obtained confirmed counterfeit ZIG-ZAG® Orange booklets from a Springtown, Texas-area retailer who identified the Defendants as the source.

14

61.     On that basis, between September and December 2016, North Atlantic investigated the Defendants; determined they are related to each other and are acting in concert/conspiracy with one another; and obtained samples of purported ZIG-ZAG® Orange products that the Defendants were offering and selling to Texas consumers.

62.     The products (cartons, booklets, and papers) that North Atlantic obtained from the Defendants are clearly counterfeit.  They bear the hallmarks of counterfeit ZIG-ZAG® Orange products, and they are distributed at prices less than the best price available from North Atlantic.

63.     To illustrate:

    a.     On or around November 11, 2016, North Atlantic obtained one (1) carton of purported ZIG-ZAG® Orange product from the Defendants and inspected it for counterfeit markers.  Based on the presence of these markers, North Atlantic conclusively determined that the carton and its contents (booklets and papers) are counterfeit.

    b.     On or around November 16, 2016, North Atlantic obtained another (1) carton of purported ZIG-ZAG® Orange product from the Defendants. When North Atlantic inspected the product for counterfeit markers, it found them.  Thus, it concluded that the carton and its contents (booklets and papers) are counterfeit.

    c.     On or around November 22, 2016, North Atlantic obtained yet another (1) carton of purported ZIG-ZAG® Orange product from the Defendants. North Atlantic inspected the product for counterfeit markers, and it found them.  Thus, North Atlantic concluded that this carton and its contents (booklets and papers) are also counterfeit.

d.      On or around December 1, 2016, North Atlantic obtained yet another (1) carton of purported ZIG-ZAG® Orange product from the Defendants. North Atlantic examined this carton and its contents (booklets and papers) and located counterfeit markers. Thus, it conclusively determined that these products are also counterfeit.

e.      On or around December 12, 2016, North Atlantic obtained yet another (1) carton of purported ZIG-ZAG® Orange product from the Defendants. North Atlantic examined this carton and its contents (booklets and papers) and located counterfeit markers, confirming the products are counterfeit.

64.     Because of the pace and frequency of these sales, North Atlantic believes the Defendants have sold hundreds, or potentially thousands more cartons of counterfeit ZIG-ZAG® Orange product. Thus, North Atlantic believes the Defendants' distribution of counterfeit products is on a very large scale.

<strong>Defendants' Counterfeiting is Willful</strong>

65.     North Atlantic also believes the Defendants' counterfeiting is willful.

66.     Upon information and belief, the Defendants know they are importing, manufacturing, selling, or otherwise distributing counterfeit versions of North Atlantic's ZIG-ZAG® Orange cigarette paper products.

67.     The circumstances of the purchases and sales of such products (*e.g.*, at below-market prices, from a source other than North Atlantic) underscore the products' counterfeit nature.

68.     The Defendants have also demonstrated their knowledge by informing an undercover North Atlantic investigator that they can obtain "bulk" ZIG-ZAG® Orange product

at below-market prices. The bulk product is probably counterfeit, because North Atlantic does not offer authentic ZIG-ZAG® Orange product in bulk quantities for below-market prices.

69.     Upon information and belief, the Defendants' counterfeit products are manufactured in/imported from China.

70.     Upon information and belief, the Defendants know the counterfeit products are manufactured in/imported from China.

71.     At the very least, the Defendants know the counterfeit products are not manufactured in/imported from France, where all authentic ZIG-ZAG® Orange product is manufactured.

72.     Thus, the Defendants know when they purchase, sell, or otherwise distribute such Chinese-manufactured products, that they are purchasing, selling, and distributing counterfeit products.

### Irreparable Harm

73.     The Defendants' willful counterfeiting deprives North Atlantic of its right and the ability to control the quality of products distributed under its brands.

74.     The Defendants thereby jeopardize the enormous goodwill and value associated with those brands, which North Atlantic and its predecessor-in-interest have built up over the past century.

75.     The Defendants' misconduct also damages the goodwill associated with the ZIG-ZAG® Orange Trade Dress, which consumers immediately recognize and associate with goods of high quality.

76.     The Defendants' counterfeit products and packaging appear to be of vastly inferior quality compared to North Atlantic's authentic products.

17

77.     Consumers deceived by the Defendants' simulated ZIG-ZAG® Orange products and packaging have purchased, and will purchase counterfeit products by mistake.

78.     Thus, consumers will think less favorably of North Atlantic than they would if they had purchased authentic products.

79.     Consumers will also discredit North Atlantic's reputation for being the exclusive source of high-quality ZIG-ZAG® brand products.

80.     As a direct and proximate result of the foregoing, North Atlantic has been suffering (a) actual economic damages in the form of lost sales, revenues, and profits, and (b) immediate, irreparable harm to its Trademarks, Copyright, Trade Dress, goodwill, and reputation, for which it has no adequate remedy at law.

## COUNT ONE
## FEDERAL TRADEMARK INFRINGEMENT

81.     North Atlantic repeats, realleges and incorporates by reference each and every allegation contained in the above paragraphs, as though fully set forth herein.

82.     In violation of 15 U.S.C. § 1114, the Defendants have used in commerce, without North Atlantic's consent, either a reproduction, counterfeit, copy, or colorable imitation of the ZIG-ZAG® and NAOC® Trademarks on and in connection with the sale, offering for sale, distribution, or advertising of counterfeit ZIG-ZAG® Orange cigarette paper products, which is likely to cause confusion, or to cause mistake, or to deceive consumers.

83.     The Defendants' actions constitute willful infringement of North Atlantic's exclusive rights in and to the ZIG-ZAG® and NAOC® Trademarks, which are registered on the Principal Register, and which North Atlantic either owns or has the exclusive right to use and enforce in the United States.

84.     As a direct and proximate result of the Defendants' willful misconduct, North Atlantic has suffered irreparable harm to the value and goodwill associated with the ZIG-ZAG® and NAOC® Trademarks, and their reputation in the industry. Unless the Defendants are restrained and enjoined from further infringement of the ZIG-ZAG® and NAOC® Trademarks, North Atlantic (and consumers) will continue to be irreparably harmed.

85.     North Atlantic has absolutely no remedy at law that could compensate it for the continued, irreparable harm that it will suffer if the Defendants' willful misconduct is allowed to continue.

86.     As a direct and proximate result of the Defendants' willful misconduct, North Atlantic has suffered damages to the valuable, registered ZIG-ZAG® and NAOC® Trademarks and other damages in an amount not yet known, but to be proved at trial.  North Atlantic is also entitled to statutory damages, enhanced damages, and/or its reasonable attorneys' fees, at North Atlantic's option.

## COUNT TWO
## FALSE DESIGNATION OF ORIGIN AND
## TRADEMARK AND TRADE DRESS INFRINGEMENT

87.     North Atlantic repeats, realleges and incorporates by reference each and every allegation contained in the above paragraphs, as though fully set forth herein.

88.     In violation of 15 U.S.C. § 1125(a), the Defendants have used in commerce a slogan, trade dress, word, term, name, symbol, or device, or any combination thereof, or a false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which was and is likely to cause confusion or to cause mistake, or to deceive consumers as to an affiliation, connection, or association with North Atlantic.

89.     The Defendants have willfully infringed North Atlantic's exclusive rights in and to the common-law rights associated with the ZIG-ZAG® and NAOC® Trademarks, the

unregistered ZIG-ZAG® Orange Trade Dress, and have falsely designated the counterfeit products as "Distributed by North Atlantic Operating Company, Inc." on the packaging.

90.     As a direct and proximate result of the Defendants' willful misconduct, North Atlantic has suffered and is suffering irreparable harm to the value and goodwill associated with the ZIG-ZAG® and NAOC® Trademarks, the ZIG-ZAG® Orange Trade Dress, and associated common-law rights, and to North Atlantic's nationwide reputation as a distributor of high-quality ZIG-ZAG® brand cigarette paper products.

91.     Unless the Defendants are restrained and enjoined from further infringement of the ZIG-ZAG® and NAOC® Trademarks, the ZIG-ZAG® Orange Trade Dress, and associated common-law rights, and from falsely stating their counterfeit products are "Distributed by North Atlantic Operating Company, Inc.", North Atlantic will continue to be irreparably harmed.

92.     North Atlantic has no adequate remedy at law that could compensate it for the continued and irreparable harm it has suffered, and will continue to suffer if the Defendants' willful misconduct is allowed to continue.

93.     As a direct and proximate result of the Defendants' willful misconduct, North Atlantic has suffered damages to the valuable ZIG-ZAG® and NAOC® Trademarks, the ZIG-ZAG® Orange Trade Dress, and associated common-law rights, along with other damages in an amount not yet known but to be proved at trial.

## COUNT THREE
## COPYRIGHT INFRINGEMENT

94.     North Atlantic repeats, realleges and incorporates by reference each and every allegation contained in the above paragraphs, as though fully set forth herein.

95.     Currently, and at all relevant times, North Atlantic has been the sole owner of all rights, title, and interest in and to the NAOC© Copyright.

96.    North Atlantic has the exclusive right to, among other things, reproduce, distribute, publicly display, and create derivative works from the NAOC© Copyright, which it solely owns.

97.    North Atlantic registered its claim to copyright in the NAOC© Copyright with the United States Copyright Office.  To wit, North Atlantic possesses a copyright registration certificate for the NAOC© Copyright dated October 11, 2002.

98.    The Defendants have directly infringed the NAOC© Copyright by unlawfully reproducing, transmitting, distributing, publicly displaying, or creating derivative works based on the NAOC© Copyright, in violation of North Atlantic's exclusive rights under 17 U.S.C. § 106.

99.    The foregoing actions of the Defendants in violation of North Atlantic's rights have been willful and intentional, executed with full knowledge of North Atlantic's exclusive rights in the NAOC© Copyright and in conscious disregard of those rights.

100.    North Atlantic is entitled to recover from the Defendants the profits that the Defendants obtained through infringements of the NAOC© Copyright, as well as North Atlantic's damages from those infringements, or, at North Atlantic's election, statutory damages pursuant to 17 U.S.C. § 504.

101.    North Atlantic is also entitled to recover costs and attorneys' fees from the Defendants pursuant to 17 U.S.C. § 505.

102.    The Defendants' willful infringements of North Atlantic's NAOC© Copyright has caused, and unless restrained and enjoined by this Court, will continue to cause, irreparable injury to North Atlantic, which is not fully compensable in monetary damages.  North Atlantic is therefore entitled to preliminary and permanent injunctions prohibiting the Defendants from further infringing North Atlantic's NAOC© Copyright.

## COUNT FOUR
## INJURY TO BUSINESS REPUTATION

103.    North Atlantic repeats, realleges and incorporates by reference each and every allegation contained in the above paragraphs, as though fully set forth herein.

104.    The ZIG-ZAG® and NAOC® Trademarks, and the ZIG-ZAG® Orange Trade Dress are strong and distinctive marks and trade dress that have been in use for many years and have achieved enormous goodwill and widespread public recognition. North Atlantic has exclusive rights in and to these Trademarks and the ZIG-ZAG® Orange Trade Dress.

105.    Through North Atlantic's long-standing, continuous use of those marks and trade dress in commerce, including commerce within the State of Texas, the ZIG-ZAG® and NAOC® Trademarks, and the ZIG-ZAG® Orange Trade Dress have become and continue to be famous and distinctive.

106.    The Defendants' unauthorized use of the ZIG-ZAG® and NAOC® Trademarks and the ZIG-ZAG® Orange Trade Dress, independently and in conspiracy with one another, to sell counterfeit ZIG-ZAG® Orange cigarette paper products dilutes the distinctive quality of the marks and trade dress and decreases the capacity of such marks and trade dress to identify and distinguish ZIG-ZAG® brand products that North Atlantic has distributed and distributes. The Defendants' unauthorized use has also caused a likelihood of harm to North Atlantic's business reputation, as described above.

107.    In view of the above, the Defendants have caused and will continue to cause irreparable harm to North Atlantic's goodwill and business reputation, in violation of Texas Business and Commerce Code § 16.29.

108.    Upon information and belief, the Defendants have made and will continue to make substantial profits and gains to which they are not entitled in law or equity.

22

109.   The Defendants are liable to North Atlantic for all damages, whether direct or indirect, for the misappropriation of the ZIG-ZAG® and NAOC® Trademarks, the ZIG-ZAG® Orange Trade Dress, North Atlantic's and the ZIG-ZAG® brand name, reputation, and goodwill, which damages are subject to trebling.

110.   Upon information and belief, the Defendants intend to continue their infringing acts unless this Court restrains and enjoins them.

111.   The Defendants' willful misconduct has also damaged and will continue to damage North Atlantic, and North Atlantic has no adequate legal remedy.

112.   Thus, North Atlantic is entitled to injunctive relief prohibiting the Defendants from using the ZIG-ZAG® or NAOC® Trademarks, or the ZIG-ZAG® Orange Trade Dress; to recover all damages, including attorneys' fees, that North Atlantic has sustained and will sustain as a result of the Defendants' misconduct; to recover all gains, profits, and advantages obtained as a result of the Defendants' counterfeiting and other misconduct, in an amount not yet known but to be determined at trial; and to recover the costs of this action.

## COUNT FIVE
## COMMON-LAW TRADEMARK INFRINGEMENT

113.   North Atlantic repeats, realleges and incorporates by reference each and every allegation contained in the above paragraphs, as though fully set forth herein.

114.   In violation of the common law of the State of Texas, the Defendants have used in commerce, without North Atlantic's consent, either a reproduction, counterfeit, copy, or colorable imitation of the ZIG-ZAG® and NAOC® Trademarks on and in connection with the sale, offering for sale, distribution, or advertising of counterfeit ZIG-ZAG® Orange cigarette paper products, which is likely to cause confusion, or to cause mistake, or to deceive consumers.

23

115.     The Defendants' actions constitute willful infringement of North Atlantic's exclusive rights in and to the ZIG-ZAG® and NAOC® Trademarks, which North Atlantic either owns or has the exclusive right to use and enforce in the United States, including in this State.

116.     The Defendants' misconduct and infringing activities in appropriating North Atlantic's rights in its common-law and registered ZIG-ZAG® and NAOC® Trademarks, and ZIG-ZAG® Orange Trade Dress, were and are intended to capitalize on North Atlantic's goodwill for the purpose of the Defendants' own pecuniary gain.

117.     As a direct and proximate result of the Defendants' willful misconduct, North Atlantic has suffered irreparable harm to the value and goodwill associated with the ZIG-ZAG® and NAOC® Trademarks, and their reputation in the industry, which North Atlantic has developed over time as a result of its investment of substantial time, resources, and effort. The Defendants are being unjustly enriched and are benefiting from North Atlantic's intellectual property rights, which rightfully and exclusively belong to it.

**COUNT SIX**
**COMMON-LAW TRADE DRESS INFRINGEMENT**

118.     North Atlantic repeats, realleges and incorporates by reference each and every allegation contained in the above paragraphs, as though fully set forth herein.

119.     The Defendants' willful infringement of North Atlantic's exclusive rights in and to the distinctive and protectable ZIG-ZAG® Orange Trade Dress has caused and is likely to continue to cause confusion as to the source of the Defendants' counterfeit products, to North Atlantic's and consumers' detriment.

120.     The Defendants' acts were and are willful, deliberate, and intended to confuse the public or to injure North Atlantic.

24

## COUNT SEVEN
## COMMON-LAW UNFAIR COMPETITION

121.    North Atlantic repeats, realleges and incorporates by reference each and every allegation contained in the above paragraphs, as though fully set forth herein.

122.    The foregoing acts of the Defendants permit the Defendants to use and benefit from the goodwill and reputation that North Atlantic has earned  and to obtain ready customer acceptance of the Defendants' products. The Defendants' acts constitute unfair competition, palming off, or misappropriation in violation of Texas common law, for which North Atlantic is entitled to recover any and all remedies provided by the common law.

123.    The Defendants' complained-of conduct is also extreme, outrageous, fraudulent and has been inflicted on North Atlantic in reckless disregard of North Atlantic's trademark and other rights.   The Defendants' conduct was and is harmful to North Atlantic, and as such, supports an award of exemplary and punitive damages in an amount sufficient to punish and make an example of the Defendants and to deter the Defendants from similar conduct in the future.

124.    North Atlantic has absolutely no adequate remedy at law that could compensate it for the continued, irreparable harm it will suffer if the Defendants' willful misconduct is allowed to continue.  As such, North Atlantic is entitled to injunctive relief prohibiting the Defendants from using any of the ZIG-ZAG® or NAOC® Trademarks, or the ZIG-ZAG® Orange Trade Dress, or marks or trade dress identical or similar thereto, for any reason; to recover all damages, including attorneys' fees that North Atlantic has sustained or will sustain from the Defendants' acts; to recover all gains, profits, or advantages the Defendants have obtained as a result of their misconduct, in an amount not yet known but to be proved at trial; and to recover  the costs of this action from the Defendants.

## COUNT EIGHT
## CIVIL CONSPIRACY AGAINST ALL DEFENDANTS

125.    North Atlantic repeats, realleges  and incorporates by reference each and every allegation contained in the above paragraphs, as though fully set forth herein.

126.    The Defendants have acted together for the unlawful purpose of infringing North Atlantic's registered and common-law ZIG-ZAG® or NAOC® Trademarks, the ZIG-ZAG® Orange Trade Dress, and NAOC© Copyright, and otherwise unfairly competing with North Atlantic.

127.    The Defendants had a meeting of the minds to exploit North Atlantic's  registered and common-law ZIG-ZAG® or NAOC® Trademarks, the ZIG-ZAG® Orange Trade Dress, and NAOC© Copyright, and unfairly compete with North Atlantic  in violation of federal, state and common law, which proximately caused injuries and damage to North Atlantic.

128.    In the course of and in furtherance of the conspiracy, the Defendants violated the federal, state and common law.

129.    The Defendants are jointly and severally liable for all damages, including exemplary damages, for conspiring for the unlawful purpose of infringing North Atlantic's registered and common-law ZIG-ZAG® or NAOC® Trademarks, the ZIG-ZAG® Orange Trade Dress, and NAOC© Copyright, and unfairly competing with North Atlantic. As a result of this conspiracy, North Atlantic is entitled to recover all actual, consequential, and foreseeable damages arising from this wrongful conduct and exemplary or punitive damages from the Defendants.

130.    Alternatively, the Defendants aided and abetted each others' tortious conduct by participating, assisting, encouraging, or acting in concert with one another.

131.    Alternatively, Defendants Mike's Worldwide and Mike's Novelties and the John

Doe Corporations #1-#100 are vicariously liable for adopting, approving, and ratifying the

tortious conduct of Defendants Manisch Chander, Alex Sohani and John Does #1-#100.

## PRAYER FOR RELIEF

WHEREFORE, North Atlantic demands judgment against the Defendants as follows:

1.    For judgment that:

    a.    the Defendants have violated Section 32 of the Lanham Act, 15 U.S.C. § 1114;

    b.    the Defendants have violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

    c.    the Defendants have violated the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*;

    d.    the Defendants have caused injury to North Atlantic's business reputation, in violation of Texas Business & Commercial Code § 16.29;

    e.    the Defendants have infringed North Atlantic's Trademarks and have unfairly competed with North Atlantic, in violation of Texas common law; and

    f.    In all instances, the Defendants acted in bad faith, willfully, intentionally, and/or in malicious disregard of North Atlantic's lawful rights.

2.    For an order temporarily restraining, and preliminarily and permanently enjoining

the Defendants, their affiliates, subsidiaries, parents, and their respective officers,

agents, servants, attorneys, and employees, and all persons in active concert or

participation with them, and mandating that the Defendants forever cease and

desist and refrain from, anywhere in the world:

    a.    Directly or indirectly importing, exporting, manufacturing, advertising, marketing, promoting, making, purchasing, offering for sale, selling, or distributing or otherwise disposing of any counterfeit ZIG-ZAG® brand cigarette paper products, including but not limited to, ZIG-ZAG® Orange products, or any purported ZIG-ZAG® products not sold under license or authority of North Atlantic, or any packaging for same, containing or

27

displaying infringing ZIG-ZAG® or NAOC® Trademarks, or the NAOC© Copyright, or any colorable imitation thereof, or simulating the ZIG-ZAG® Orange Trade Dress;

b.    Selling or passing off, or inducing or enabling others to sell or pass off, any of North Atlantic's products, or products not authorized by North Atlantic, not produced, imported, and distributed under the control or supervision of North Atlantic, and/or approved for sale in the United States under the ZIG-ZAG® or NAOC® Trademarks, or the NAOC© Copyright, or the ZIG-ZAG® Orange Trade Dress;

c.    Committing any acts calculated to cause purchasers to believe that counterfeit or infringing ZIG-ZAG® brand cigarette paper products are sold under the control or supervision of North Atlantic, when they are not;

d.    Importing, shipping, delivering, distributing, returning, or otherwise disposing of, in any manner, products or inventory not authorized by North Atlantic to be sold or offered for sale in the United States bearing the ZIG-ZAG® or NAOC® Trademarks, the NAOC© Copyright, or ZIG-ZAG® Orange Trade Dress;

e.    Attempting, causing, or assisting any of the above-described acts, including but not limited to, enabling others to conduct the scheme described above, or by passing along information to others to allow them to do so; and

f.    Destroying or disposing of any documents, records, or electronically-stored information related to the import, manufacture, distribution, advertisement, promotion, making, purchase, offer to sell, or sale of any product that has been or is intended to be sold in packaging containing the ZIG-ZAG® or NAOC® Trademarks or the NAOC© Copyright or simulating the ZIG-ZAG® Orange Trade Dress.

3.    For an order enjoining the Defendants and their agents, employees, representatives, successors, and assigns from forming or causing to be formed any corporation, partnership, or other entity that engages in any of the conduct described above.

4.    For an order requiring the Defendants to cooperate with North Atlantic in good faith in its investigation of counterfeit sales at their retail and wholesale establishments, including, without limitation by:

a. Permitting North Atlantic representatives or their designees to conduct inspections of the Defendants' inventories of cigarette paper products to determine if any cigarette paper products bearing the ZIG-ZAG® or NAOC® Trademarks or the NAOC© Copyright, or housed in any packaging simulating the ZIG-ZAG® Orange Trade Dress, are counterfeit, and to retain possession of any such counterfeit products;

b. Responding to reasonable requests for information about the Defendants' source(s) of ZIG-ZAG® brand cigarette paper products; and

c. Cooperating with North Atlantic representatives or their designees in their investigations of any source(s) of ZIG-ZAG® brand cigarette paper products.

5. For an order:

a. Requiring the Defendants to account for and pay over to North Atlantic all profits derived from their wrongful misconduct to the full extent provided by Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a);

b. Requiring the Defendants to account for and pay to North Atlantic enhanced damages resulting from their wrongful misconduct to the full extent provided by Section 35(b) of the Lanham Act, 15 U.S.C. § 1117(b);

c. Awarding damages to North Atlantic, or statutory damages in an amount not less than $2 million ($2,000,000) per trademark pursuant to Section 35(c) of the Lanham Act, 15 U.S.C. § 1117(c);

d. Requiring the Defendants to account for and pay all profits derived from their wrongful misconduct to North Atlantic, to the full extent provided by the Copyright Act, 17 U.S.C. § 504;

e. Awarding damages to North Atlantic, or statutory damages in an amount not less than $150,000 per infringement of the NAOC© Copyright which occurred after the filing of its copyright application against each of the Defendants separately and jointly;

f. Awarding damages to North Atlantic to the full extent provided by Texas law;

g. Awarding costs of suit to North Atlantic, including reasonable attorneys' fees; and

h. Awarding such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

North Atlantic hereby demands a trial by jury on all claims and issues so triable.

Dated: December 19, 2016                    Respectfully submitted,

                                            /s/ Marcella Ballard

                                            Marcella Ballard (*Pro Hac Vice* Pending)
                                            Email: MBallard@Venable.com
                                            New York #2503761
                                            Venable LLP
                                            1270 6th Avenue, 24th Floor
                                            New York, NY 10020
                                            Phone: 212-370-6289

                                            ATTORNEYS FOR PLAINTIFFS NORTH
                                            ATLANTIC OPERATING COMPANY INC. AND
                                            NATIONAL TOBACCO COMPANY, L.P.

OF COUNSEL:
Victoria R. Danta (*Pro Hac Vice* Pending)
Email: VRDanta@Venable.com
New York #4886206; Pennsylvania #320252
Venable LLP
1270 6th Avenue, 24th Floor
New York, NY 10020
Phone: 212-370-6289

Lisa H. Meyerhoff
Texas Bar No. 14000255
S.D. Admissions No. 18693
Email: Lisa.Meyerhoff@bakermckenzie.com
Myall S. Hawkins
Texas Bar No. 09250320
S.D. Admission No. 7845
Email: Myall.Hawkins@bakermckenzie.com
BAKER & McKENZIE LLP
700 Louisiana, Ste. 3000
Houston, Texas 77002
Phone: 713 427 5000
Fax: 713 427 5099

ATTORNEYS FOR PLAINTIFFS  NORTH
ATLANTIC OPERATING COMPANY INC.;
and NATIONAL TOBACCO COMPANY, L.P.

# **EXHIBIT A**

Int. Cl.: 34

Prior U.S. Cl.: 8

**United States Patent and Trademark Office**

10 Year Renewal

Reg. No. 610,530
Registered Aug. 16, 1955
Renewal Term Begins Aug. 16, 1995

## TRADEMARK
## PRINCIPAL REGISTER

# ZIG-ZAG

BOLLORE TECHNOLOGIES (FRANCE CORPORATION)
ODET 29500 ERGUE GABERIC
COMMUNE D'ERGUE GABERIC, FRANCE, BY ASSIGNMENT, CHANGE OF NAME, MERGER AND CHANGE OF NAME FROM BRAUN-STEIN FRERES, INCORPORATED (DELAWARE CORPORATION) NEW YORK, NY

OWNER OF U.S. REG. NO. 76,736.

FOR: CIGARETTE PAPER, IN CLASS 8 (INT. CL. 34).

FIRST USE 8–14–1901; IN COMMERCE 8–14–1901.

SER. NO. 71–645,385, FILED 4–16–1953.

*In testimony whereof I have hereunto set my hand and caused the seal of The Patent and Trademark Office to be affixed on Oct. 17, 1995.*

COMMISSIONER OF PATENTS AND TRADEMARKS

## Amendment

Registered August 16, 1955                    Registration No. 610,530

Braunstein Freres, Incorporated

Application to amend having been made by Papeteries Braunstein, owner of the registration above identified, the drawing is amended to appear as follows:

**ZIG~ZAG**

Such amendment has been entered upon the records of the Patent and Trademark Office and the said original registration should be read as so amended.

Signed and sealed this 21st day of February 1978.

[SEAL]

Attest:

JANIE COOKSEY,
*Attesting Officer.*

LUTRELLE F. PARKER,
*Commissioner.*

# United States Patent Office

**610,530**
Registered Aug. 16, 1955

## PRINCIPAL REGISTER
### Trademark

Ser. No. 645,385, filed Apr. 16, 1953



Braunstein Freres, Incorporated (Delaware corporation)
21 W. 18th St.
New York, N. Y.

For: CIGARETTE PAPER, in CLASS 8.
First used Aug. 14, 1901, and in commerce Aug. 14, 1901.
Owner of the trademark shown in Reg. No. 76,736 (expired).

# United States Patent Office

**610,530**
Registered Aug. 16, 1955

## PRINCIPAL REGISTER
### Trademark

Ser. No. 645,385, filed Apr. 16, 1953



Braunstein Freres, Incorporated (Delaware corporation)
21 W. 18th St.
New York, N. Y.

For: CIGARETTE PAPER, in CLASS 8.
First used Aug. 14, 1901, and in commerce Aug. 14, 1901.
Owner of the trademark shown in Reg. No. 76,736 (expired).

## Amendment

Registered August 16, 1955                          Registration No. 610,530

Braunstein Freres, Incorporated

Application to amend having been made by Papeteries Braunstein, owner of the registration above identified, the drawing is amended to appear as follows:

# ZIG~ZAG

Such amendment has been entered upon the records of the Patent and Trademark Office and the said original registration should be read as so amended.

Signed and sealed this 21st day of February 1978.

[SEAL]

Attest:

JANIE COOKSEY,                                      LUTRELLE F. PARKER,
*Attesting Officer.*                                *Commissioner.*

Int. Cl.: 34

U.S. Cl.: 8

Reg. No. 1,127,946

**U.S. Patent and Trademark Office**   Reg. Dec. 18, 1979

## TRADEMARK
### Principal Register

## ZIG ZAG

Papeteries Braunstein (France corporation)
83, Boulevard Exelmans
Paris, France.

For: Cigarette Papers —in Class 34. (U.S. Cl. 8).
First use Mar. 1903; in commerce Mar. 1903.
Owner of U.S. Reg. No. 610,530.

Ser. No. 68,676. Filed Nov. 11, 1975.

BETH CHAPMAN, Examiner

Int. Cl.: 34

U.S. Cl.: 8

Reg. No. 1,127,946

U.S. Patent and Trademark Office

Reg. Dec. 18, 1979

## TRADEMARK
### Principal Register

## ZIG ZAG

Papeteries Braunstein (France corporation)
83, Boulevard Exelmans
Paris, France.

For: Cigarette Papers —in Class 34. (U.S. Cl. 8).
First use Mar. 1903; in commerce Mar. 1903.
Owner of U.S. Reg. No. 610,530.

Ser. No. 68,676. Filed Nov. 11, 1975.

BETH CHAPMAN, Examiner

**Int. Cl.: 34**

**U.S. Cl.: 8**

Reg. No. 1,127,946

**U.S. Patent and Trademark Office**                     Reg. Dec. 18, 1979

**TRADEMARK**
**Principal Register**

**ZIG ZAG**

Papeteries Braunstein (France corporation)
83, Boulevard Exelmans
Paris, France.

For: Cigarette Papers —in Class 34. (U.S. Cl. 8).
First use Mar. 1903; in commerce Mar. 1903.
Owner of U.S. Reg. No. 610,530.

Ser. No. 68,676. Filed Nov. 11, 1975.

BETH CHAPMAN, Examiner

**Int. Cl.: 34**

**Prior U.S. Cls.: 2, 8, 9 and 17**

**Reg. No. 2,169,540**

## United States Patent and Trademark Office

**Registered June 30, 1998**

### TRADEMARK
### PRINCIPAL REGISTER



BOLLORE TECHNOLOGIES (FRANCE SOCIE-
TE ANONYME)
ODET 29500 ERGUE GABERIC
COMMUNE D'ERGUE GABERIC, FRANCE

FOR: CIGARETTE PAPERS, IN CLASS 34
(U.S. CLS. 2, 8, 9 AND 17).

FIRST USE 4-0-1961; IN COMMERCE
4-0-1961.

OWNER OF U.S. REG. NOS. 610,530, 1,127,946,
AND 1,247,856.

THE DRAWING CONSISTS OF A FANCIFUL
REPRESENTATION OF A MAN HOLDING A
CIGARETTE AND CIGARETTE PAPER PACK-
AGE ON WHICH THE WORDS "ZIG ZAG"
APPEAR.

SER. NO. 75-304,722, FILED 6-6-1997.

WILLIAM JACKSON, EXAMINING ATTOR-
NEY

Int. Cl.: 34

Prior U.S. Cls.: 2, 8, 9 and 17

**United States Patent and Trademark Office**

Reg. No. 2,169,540

Registered June 30, 1998

## TRADEMARK
### PRINCIPAL REGISTER



BOLLORE TECHNOLOGIES (FRANCE SOCIE-TE ANONYME)
ODET 29500 ERGUE GABERIC
COMMUNE D'ERGUE GABERIC, FRANCE

FOR: CIGARETTE PAPERS, IN CLASS 34 (U.S. CLS. 2, 8, 9 AND 17).

FIRST USE 4–0–1961; IN COMMERCE 4–0–1961.

OWNER OF U.S. REG. NOS. 610,530, 1,127,946, AND 1,247,856.

THE DRAWING CONSISTS OF A FANCIFUL REPRESENTATION OF A MAN HOLDING A CIGARETTE AND CIGARETTE PAPER PACK-AGE ON WHICH THE WORDS "ZIG ZAG" APPEAR.

SER. NO. 75–304,722, FILED 6–6–1997.

WILLIAM JACKSON, EXAMINING ATTOR-NEY

Int. Cl.: 34

Prior U.S. Cls.: 2, 8, 9 and 17

Reg. No. 2,169,549

## United States Patent and Trademark Office

Registered June 30, 1998

## TRADEMARK
### PRINCIPAL REGISTER



BOLLORE TECHNOLOGIES (FRANCE SOCIE-
TE ANONYME)
ODET 29500 ERGUE GABERIC
COMMUNE D'ERGUE GABERIC, FRANCE

FOR: CIGARETTE PAPERS, IN CLASS 34
(U.S. CLS. 2, 8, 9 AND 17).
FIRST USE 3-0-1903; IN COMMERCE
3-0-1903.
OWNER OF U.S. REG. NOS. 610,530, 1,127,946,
AND 1,247,856.

THE DRAWING CONSISTS OF A FANCIFUL
REPRESENTATION OF A MAN HOLDING A
CIGARETTE AND CIGARETTE PAPER PACK-
AGE ON WHICH THE WORDS "ZIG ZAG"
APPEAR.

SER. NO. 75-304,818, FILED 6-6-1997.

WILLIAM JACKSON, EXAMINING ATTOR-
NEY

Int. Cl.: 34

Prior U.S. Cls.: 2, 8, 9 and 17

Reg. No. 2,169,549

**United States Patent and Trademark Office**          Registered June 30, 1998

## TRADEMARK
### PRINCIPAL REGISTER



BOLLORE TECHNOLOGIES (FRANCE SOCIE-
TE ANONYME)
ODET 29500 ERGUE GABERIC
COMMUNE D'ERGUE GABERIC, FRANCE

FOR: CIGARETTE PAPERS, IN CLASS 34
(U.S. CLS. 2, 8, 9 AND 17).
FIRST USE 3-0-1903; IN COMMERCE
3-0-1903.
OWNER OF U.S. REG. NOS. 610,530, 1,127,946,
AND 1,247,856.

THE DRAWING CONSISTS OF A FANCIFUL
REPRESENTATION OF A MAN HOLDING A
CIGARETTE AND CIGARETTE PAPER PACK-
AGE ON WHICH THE WORDS "ZIG ZAG"
APPEAR.

SER. NO. 75-304,818, FILED 6-6-1997.

WILLIAM JACKSON, EXAMINING ATTOR-
NEY

# **EXHIBIT B**

Int. Cl.: 35

Prior U.S. Cls.: 100, 101, and 102

**United States Patent and Trademark Office**

Reg. No. 2,664,694
Registered Dec. 17, 2002

**SERVICE MARK**
**PRINCIPAL REGISTER**



NORTH ATLANTIC OPERATING COMPANY, INC. (DELAWARE CORPORATION)
257 PARK AVENUE SOUTH, SEVENTH FLOOR
NEW YORK, NY 10010

FOR: DISTRIBUTORSHIPS IN THE FIELD OF TOBACCO PRODUCTS AND SMOKERS ACCESSORIES, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FIRST USE 1-7-2002; IN COMMERCE 1-7-2002.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "OPERATING COMPANY, INC.", APART FROM THE MARK AS SHOWN.

SN 78-092,298, FILED 11-8-2001.

ARETHA MASTERSON, EXAMINING ATTORNEY

Int. Cl.: 35

Prior U.S. Cls.: 100, 101, and 102

## United States Patent and Trademark Office

Reg. No. 2,664,694

Registered Dec. 17, 2002

### SERVICE MARK
### PRINCIPAL REGISTER



NORTH ATLANTIC OPERATING COMPANY, INC. (DELAWARE CORPORATION)
257 PARK AVENUE SOUTH, SEVENTH FLOOR
NEW YORK, NY 10010

FOR: DISTRIBUTORSHIPS IN THE FIELD OF TOBACCO PRODUCTS AND SMOKERS ACCESSORIES, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FIRST USE 1-7-2002; IN COMMERCE 1-7-2002.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "OPERATING COMPANY, INC.", APART FROM THE MARK AS SHOWN.

SN 78-092,298, FILED 11-8-2001.

ARETHA MASTERSON, EXAMINING ATTORNEY

Int. Cl.: 34

Prior U.S. Cls.: 2, 8, 9, and 17

**United States Patent and Trademark Office**

Reg. No. 2,664,695
Registered Dec. 17, 2002

## TRADEMARK
### PRINCIPAL REGISTER



NORTH ATLANTIC OPERATING COMPANY,
INC. (DELAWARE CORPORATION)
257 PARK AVENUE SOUTH, SEVENTH FLOOR
NEW YORK, NY 10010

FOR: SMOKING TOBACCO, CIGARETTE PA-
PERS, CIGARETTE TUBES, LIGHTERS NOT OF
PRECIOUS METAL, CIGARETTE ROLLING MA-
CHINES, CIGARETTE INJECTION MACHINES, CI-
GARETTES, CIGARS, IN CLASS 34 (U.S. CLS. 2, 8, 9
AND 17).

FIRST USE 1-7-2002; IN COMMERCE 1-7-2002.

NO CLAIM IS MADE TO THE EXCLUSIVE
RIGHT TO USE "OPERATING COMPANY, INC.",
APART FROM THE MARK AS SHOWN.

SN 78-092,299, FILED 11-8-2001.

ARETHA MASTERSON, EXAMINING ATTORNEY

Int. Cl.: 34

Prior U.S. Cls.: 2, 8, 9, and 17

**United States Patent and Trademark Office**

Reg. No. 2,664,695
Registered Dec. 17, 2002

## TRADEMARK
### PRINCIPAL REGISTER



NORTH ATLANTIC OPERATING COMPANY, INC. (DELAWARE CORPORATION)
257 PARK AVENUE SOUTH, SEVENTH FLOOR
NEW YORK, NY 10010

FOR: SMOKING TOBACCO, CIGARETTE PAPERS, CIGARETTE TUBES, LIGHTERS NOT OF PRECIOUS METAL, CIGARETTE ROLLING MACHINES, CIGARETTE INJECTION MACHINES, CIGARETTES, CIGARS, IN CLASS 34 (U.S. CLS. 2, 8, 9 AND 17).

FIRST USE 1-7-2002; IN COMMERCE 1-7-2002.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "OPERATING COMPANY, INC.", APART FROM THE MARK AS SHOWN.

SN 78-092,299, FILED 11-8-2001.

ARETHA MASTERSON, EXAMINING ATTORNEY

Int. Cl.: 34

Prior U.S. Cls.: 2, 8, 9, and 17

**United States Patent and Trademark Office**

Reg. No. 2,610,473
Registered Aug. 20, 2002

## TRADEMARK
### PRINCIPAL REGISTER

## NORTH ATLANTIC OPERATING COMPANY

NORTH ATLANTIC OPERATING COMPANY, INC. (DELAWARE CORPORATION)
257 PARK AVENUE SOUTH, 7TH FLOOR
NEW YORK, NY 10010

FOR: SMOKING TOBACCO, CIGARETTE PA-PERS, CIGARETTE TUBES, LIGHTERS NOT OF PRECIOUS METAL, CIGARETTE ROLLING MA-CHINES, CIGARETTE INJECTION MACHINES, CI-GARETTES, CIGARS, IN CLASS 34 (U.S. CLS. 2, 8, 9 AND 17).

FIRST USE 11-1-1997; IN COMMERCE 11-1-1997.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "OPERATING COMPANY", APART FROM THE MARK AS SHOWN.

SN 76-115,213, FILED 8-24-2000.

KAREN K. BUSH, EXAMINING ATTORNEY

Int. Cl.: 34

Prior U.S. Cls.: 2, 8, 9, and 17

**United States Patent and Trademark Office**

Reg. No. 2,610,473
Registered Aug. 20, 2002

## TRADEMARK
### PRINCIPAL REGISTER

## NORTH ATLANTIC OPERATING COMPANY

NORTH ATLANTIC OPERATING COMPANY, INC. (DELAWARE CORPORATION)
257 PARK AVENUE SOUTH, 7TH FLOOR
NEW YORK, NY 10010

FOR: SMOKING TOBACCO, CIGARETTE PA-PERS, CIGARETTE TUBES, LIGHTERS NOT OF PRECIOUS METAL, CIGARETTE ROLLING MA-CHINES, CIGARETTE INJECTION MACHINES, CI-GARETTES, CIGARS, IN CLASS 34 (U.S. CLS. 2, 8, 9 AND 17).

FIRST USE 11-1-1997; IN COMMERCE 11-1-1997.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "OPERATING COMPANY", APART FROM THE MARK AS SHOWN.

SN 76-115,213, FILED 8-24-2000.

KAREN K. BUSH, EXAMINING ATTORNEY

Int. Cl.: 35

Prior U.S. Cls.: 100, 101 and 102

**United States Patent and Trademark Office**

Reg. No. 2,635,446
Registered Oct. 15, 2002

## SERVICE MARK
### PRINCIPAL REGISTER

## NORTH ATLANTIC OPERATING COMPANY

NORTH ATLANTIC OPERATING COMPANY, INC. (DELAWARE CORPORATION)
257 PARK AVENUE SOUTH, SEVENTH FLOOR
NEW YORK, NY 10010

FOR: DISTRIBUTORSHIPS IN THE FIELD OF TOBACCO PRODUCTS AND SMOKERS ACCESSORIES, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FIRST USE 11-1-1997; IN COMMERCE 11-1-1997.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "OPERATING COMPANY", APART FROM THE MARK AS SHOWN.

SER. NO. 78-091,719, FILED 11-5-2001.

PRISCILLA MILTON, EXAMINING ATTORNEY

Int. Cl.: 35

Prior U.S. Cls.: 100, 101 and 102

## United States Patent and Trademark Office

Reg. No. 2,635,446
Registered Oct. 15, 2002

### SERVICE MARK
### PRINCIPAL REGISTER

## NORTH ATLANTIC OPERATING COMPANY

NORTH ATLANTIC OPERATING COMPANY, INC. (DELAWARE CORPORATION)
257 PARK AVENUE SOUTH, SEVENTH FLOOR
NEW YORK, NY 10010

FOR: DISTRIBUTORSHIPS IN THE FIELD OF TOBACCO PRODUCTS AND SMOKERS ACCESSORIES, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FIRST USE 11-1-1997; IN COMMERCE 11-1-1997.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "OPERATING COMPANY", APART FROM THE MARK AS SHOWN.

SER. NO. 78-091,719, FILED 11-5-2001.

PRISCILLA MILTON, EXAMINING ATTORNEY

# **EXHIBIT C**

# CERTIFICATE OF REGISTRATION



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

**REGISTER OF COPYRIGHTS**
*United States of America*

OFFICIAL SEAL



**FORM VA**
For a Work of the Visual Arts
UNITED STATES COPYRIGHT OFFICE

**VAu 464-855**

EFFECTIVE DATE OF REGISTRATION

Oct 11 2001
Month    Day    Year

---

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**TITLE OF THIS WORK ▼**

North Atlantic Operating Company, Inc. Design

**NATURE OF THIS WORK ▼** See instructions

Graphic Design

**PREVIOUS OR ALTERNATIVE TITLES ▼**

**Publication as a Contribution** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.   **Title of Collective Work ▼**

If published in a periodical or serial give **Volume ▼**   **Number ▼**   **Issue Date ▼**   **On Pages ▼**

---

**NAME OF AUTHOR ▼**

North Atlantic Operating Company, Inc.

**DATES OF BIRTH AND DEATH**
Year Born ▼   Year Died ▼

Was this contribution to the work a "work made for hire"?
☑ Yes
☐ No

**Author's Nationality or Domicile**
Name of Country
OR { Citizen of ▶
Domiciled in ▶ U.S.A.

**Was This Author's Contribution to the Work**
Anonymous?   ☐ Yes   ☐ No
Pseudonymous?   ☐ Yes   ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Check appropriate box(es). **See Instructions**
☐ 3-Dimensional sculpture   ☐ Map   ☐ Technical drawing
☑ 2-Dimensional artwork   ☐ Photograph   ☐ Text
☐ Reproduction of work of art   ☐ Jewelry design   ☐ Architectural work

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼   Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**Author's Nationality or Domicile**
Name of Country
OR { Citizen of ▶
Domiciled in ▶

**Was This Author's Contribution to the Work**
Anonymous?   ☐ Yes   ☐ No
Pseudonymous?   ☐ Yes   ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Check appropriate box(es). **See Instructions**
☐ 3-Dimensional sculpture   ☐ Map   ☐ Technical drawing
☐ 2-Dimensional artwork   ☐ Photograph   ☐ Text
☐ Reproduction of work of art   ☐ Jewelry design   ☐ Architectural work

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

---

**Year in Which Creation of This Work Was Completed**   2001   This information must be given in all cases.

**Date and Nation of First Publication of This Particular Work**   Complete this information ONLY if this work has been published.   Month ▶ _____ Day ▶ _____ Year ▶ _____ ◀ Nation

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼

North Atlantic Operating Company, Inc.
257 Park Avenue South
New York, New York 10010

**Transfer** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

See instructions before completing this space.

**APPLICATION RECEIVED**
OCT 11 2001
**ONE DEPOSIT RECEIVED**

**TWO DEPOSITS RECEIVED**
OCT 11 2001
**FUNDS RECEIVED**

DO NOT WRITE HERE
OFFICE USE ONLY

---

**MORE ON BACK ▶** • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.   • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of ___ pages

EXAMINED BY _____   FORM VA

CHECKED BY

☐ CORRESPONDENCE
Yes

FOR
COPYRIGHT
OFFICE
USE
ONLY.

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes ☐ No If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼

a. ☐ This is the first published edition of a work previously registered in unpublished form.
b. ☐ This is the first application submitted by this author as copyright claimant.
c. ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: **Previous Registration Number** ▼         **Year of Registration** ▼

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.
a. **Preexisting Material** Identify any preexisting work or works that this work is based on or incorporates. ▼

b. **Material Added to This Work** Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**6**
a
See instructions before completing this space.
b

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼                                    Account Number ▼

**7**
a

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent.  Name/Address/Apt/City/State/ZIP ▼

Matthew G. Owen, Esq.
Greenebaum Doll & McDonald PLLC
3300 National City Tower, 101 South Fifth Street, Louisville, Kentucky  40202

b

Area code and daytime telephone number ► ( 502 ) 589-4200          Fax number ► ( 502 ) 540-2136

Email► nigo@gdm.com

**CERTIFICATION** I, the undersigned, hereby certify that I am the

check only one ☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☐ authorized agent of **North Atlantic Operating Company, Inc.**
Name of author or other copyright claimant, or owner of exclusive right(s) ▲

**8**

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Matthew G. Owen, Esq.                                        Date► October 10, 2001

Handwritten signature (X) ▼
X _____

**9**

Certificate will be mailed in window envelope to this address:

Name ▼
Matthew G. Owen, Esq.
Greenebaum Doll & McDonald PLLC
Number/Street/Apt ▼
3300 National City Tower, 101 South Fifth Street
City/State/ZIP ▼
Louisville, Kentucky 40202

**YOU MUST**
• Complete all necessary spaces
• Sign your application in space 8
**SEND ALL 3 ELEMENTS IN THE SAME PACKAGE**
1. Application form
2. Nonrefundable filing fee in check or money order payable to Register of Copyrights
3. Deposit material
**MAIL TO**
Library of Congress
Copyright Office
101 Independence Avenue, S.E.
Washington, D.C. 20559-6000

17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.
June 1999—100,000          ♻ PRINTED ON RECYCLED PAPER          ☆U.S. GOVERNMENT PRINTING OFFICE: 1999-454-879/71
WEB REV: June 1999

# **<u>EXHIBIT D</u>**



Complaint - Exhibit D - Page 2 of 5



Complaint - Exhibit D - Page 3 of 5



