UNITED STATES DISTRICT COURT	SOUTHERN DISTRICT OF TEXAS
United States District Court
Southern District of Texas
**ENTERED**
July 12, 2018
David J. Bradley, Clerk

North Atlantic Operating	§
Company, Inc., et al.,	§
	§
	§
Plaintiffs,	§
	§
versus	§   Civil Action H-16-3685
	§
Mike's Worldwide, LLC, et al.,	§
	§
Defendants.	§

## Opinion on Damages

1. *Background.*

North Atlantic Operating Company, Inc., and National Tobacco Company, L.P., are the licensed distributors of Zig-Zag products in the United States. The Mike's entities and their owners – Mike's Worldwide, LLC, MWI, Mike's Novelties, Inc., Manisch "Mike" Chander Sohani, Alex Sohani, Anis Virani, BRNSS, LLC, EZSS, LLC, and ZZSS, LLC, – sell smoking paraphernalia wholesale and retail.

North Atlantic and National Tobacco began investigating Mike's for selling counterfeit Zig-Zag Orange cigarette rolling papers. They found counterfeit papers for sale and asked this court for an *ex parte* seizure order. The marshals seized counterfeit product from the warehouse.

Over the course of the litigation, Mike's ignored discovery orders and avoided answering questions. The court often had to order it to do the same thing multiple times. It asserted and re-asserted baseless counterclaims and frequently injected new arguments instead of directly addressing a current topic. The court struck its answers, and the clerk entered default against it.

2. *Damages.*

Mike's admitted to only three transactions in which it purchased counterfeit Zig-Zag papers from the unauthorized wholesaler, United

Wholesale. Mike's had claimed that it did not have payment records of its Zig-Zag purchases from United. At a conference in June of 2017, North Atlantic and National Tobacco said that they wanted to get the records from United. Three days later, United's system was "modified." North Atlantic and National Tobacco have not seen one payment record between United Wholesale and the Mike's entities.

The Mike's entities try to say that those three orders of 50 cartons each over four months were the only counterfeit Zig-Zag papers they bought from United. They say that from January 2013 to December 2016, one store that bought from a licensed wholesaler purchased more than 80,000 cartons of authentic Zig-Zag. That is exactly what is suspicious. Zig-Zag is a popular brand – so popular that the one store that was buying from an authentic source purchased 80,000 cartons of its rolling papers in four years. That all the other stores combined purchased 150 in the same period of time defies logic.

Mike's knew that it was selling counterfeit Zig-Zag papers. The Mike's entities never questioned the price difference between a carton from United and one from an authorized wholesaler – a real Zig-Zag carton costs approximately twice what a counterfeit one costs. They never complained to United about the counterfeit papers, and they continue to work with United.

Using the only data they have, North Atlantic and National Tobacco assumed that the Mike's entities bought 150 cartons every four months for the four-year limitations period for a total of 1,800. The lowest authorized price for a carton is $30.96. The price the Mike's entities paid to United is $15.96. On those numbers, North Atlantic's and National Tobacco's lost revenue is $55,728, and the Mike's entities' ill-gotten gains are $28,728.[1] The court will treble the amount that North Atlantic and National Tobacco were damaged, for a total of $167,184.[2] Adding to that the $28,728 in ill-gotten gains, the award will be $195,912.

---

[1] 15 U.S.C. §1117(a).

[2] 15 U.S.C. §1117(b).

3.  *Fees and Costs.*

The Lanham Act and the Copyright Act allow the prevailing party to recover its attorneys' fees and costs in an exceptional case.[3] The behavior of the Mike's entities and their counsel makes this case exceptional.[4] Mike's counsel was exceptionally difficult. He evaded direct questions from the court and opposing counsel as well as resisting the court's orders. Although the case did not end in a trial, the parties had to spend over a year discovering facts and frequenting the court because the Mike's entities and their counsel so often tried to block that which would lead to fruitful answers.

Most of the fees and costs were spent establishing liability, which was clear from the moment the counterfeit Zig-Zag papers were seized. Having compared the real Zig-Zag papers and the ones seized from Mike's, no reasonable person would not have concluded that ones from Mike's were counterfeit. The rest of the fees and costs were spent responding to baseless counterclaims, appearing at hearings prompted by the Mike's entities' recalcitrance, and trying to get the data to determine damages.

Counsel for North Atlantic and National Tobacco asked for $976,382.70 in attorneys' fees, accounting for 1,723.1 hours spent by attorneys billing at rates from $315 to $840. To decide whether the requested attorneys' fees are reasonable, start by multiplying the number of hours spent on the case by the rate charged. Next, look at twelve non-exclusive and overlapping factors that might weigh in favor of adjusting the fee.

These factors are: (a) time and labor required – neutral; (b) novelty and difficulty of the questions – neutral; (c) skill required to perform the legal work properly – neutral; (d) preclusion of other employment by accepting this case – neutral; (e) customary fee – neutral; (f) whether the fee is fixed or contingent – neutral; (g) time limitations imposed by the client or circumstances – neutral; (h) amount involved and results obtained – neutral; (i) experience, reputation,

---

[3] 15 U.S.C. §1117(a); 17 U.S.C. §505.

[4] *See Octane Fitness, LLC, v. ICON Health & Fitness, Inc.*, 134 S.Ct. 1749 (2014); *Baker v. DeShong*, 821 F.3d 620 (5th Cir. 2016).

and ability of the attorneys – neutral; (j) undesirability of the case –neutral; (k) nature and length of the professional relationship with the client – neutral; and (l) awards in similar cases – neutral.[5]

The factors do not weigh in favor of altering the award. The time and labor required are included in the number of hours billed. The counterfeiting question was simple; managing the responses, counterclaims, and behavior of the Mike's entities was not. The skill required has already been accounted for in the billing rates. No more than the usual amount of other work was precluded by accepting this case. The rates are customary for attorneys at large firms in New York and Houston. The clients' fees were based on the attorneys' hourly rates.

No significant time limitations were imposed. The amount involved is less than $200,000, but North Atlantic and National Tobacco prevailed. The attorneys from Venable, LLP, and Baker & McKenzie, LLP, have good reputations, which have already been included in the rates they billed. This case was not undesirable. The attorneys have a long-standing relationship with North Atlantic and National Tobacco. This award would be high, but that is because of the behavior of Mike's and its counsel. The attorneys' fees are reasonable.

North Atlantic and National Tobacco also asked for $398,823.63 in costs. This includes travel, discovery, investigation, deposition, and photocopying. All costs of the action may be recovered under the Lanham Act and the Copyright Act.[6] They may recover their costs.

---

[5] *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974).

[6] *See, e.g., Close-Up International, Inc., v. Berov*, 2007 WL 4053682 (E.D.N.Y. Nov. 13, 2007); *Ford Motor Company v. B&H Supply, Inc.*, 1987 WL 59519 (D. Minn. April 13, 1987).

4. *Conclusion.*

North Atlantic Operating Company, Inc., and National Tobacco Company, L.P., will take from Mike's Worldwide, LLC, MWI, Mike's Novelties, Inc., Manisch "Mike" Chander Sohani, Alex Sohani, Anis Virani, BRNSS, LLC, EZSS, LLC, and ZZSS, LLC, $195,912 in damages, $976,382.70 in attorneys' fees, and $398,823.63 in costs.

Signed on July 11, 2018, at Houston, Texas.

Lynn N. Hughes
United States District Judge